388 P.2d 809

**The STATE of Arizona, Appellant,**

v.

**Wayne Robert GAROUTTE, Appellee.**

No. 1233.

Supreme Court of Arizona.

En Banc.

Jan. 30, 1964.

Robert W. Pickrell, Atty. Gen., for appellant.

Johnston & Gillenwater, Phoenix, for appellee.

BERNSTEIN, Justice.

The defendant, Wayne Garoutte, was charged by direct information in the Superior Court of Maricopa County, Arizona, with the crime of manslaughter in the driving of a motor vehicle, a misdemeanor under A.R.S. § 13-456, subd. A (3) (b) as amended laws 1957, said crime happening on or about May 21, 1961. The defendant filed a motion to dismiss on the basis of A.R.S. § 13-1591 [1] which was granted.

1. "A. When a defendant is accused of a misdemeanor for which the person injured by the act constituting the offense has a remedy by a civil action, the offense may be compromised as provided in this section, except when the offense is committed by or upon any officer of justice while in the execution of the duties of his office, or when the offense is committed riotously, or with intent to commit a felony.

"B. If the party injured appears before the court in which the action is pending at any time before trial, and acknowledges that he has received satisfaction for the injury, the court may, on payment of the costs incurred, order the prosecution dismissed, and the defendant discharged. The reasons for the order shall be set forth and entered of record on the minutes and the order shall be a bar to another prosecution for the same offense.

"C. No public offense shall be compromised or the prosecution or punishment upon a compromise dismissed or stayed except as provided by law.

The order of the trial judge dismissing the charge was as follows:

"The misdemeanor with which defendant herein is charged arises as an alleged law violation based upon defendant's negligence and which negligence is defined under the manslaughter statute (13–456ARS) as a necessary element of the offense charged. In such respect, therefore, and unlike the usual criminal charge where criminal intent is a necessary element of the crime, the elements of negligence under civil and common law principals [sic] appear to enter into a determination of this particular type of offense.

"The statute in question (13–1591 ARS) can not be considered as an isolated fragment of our legal system. The manslaughter statute involving operation of motor vehicles (13–456 ARS) passed by the legislature in 1957 must necessarily be considered and construed in the light of the whole body of the law on this subject matter as it existed when that 1957 act was enacted into law, and the legislature is presumed to know of long established laws and procedures when passing new legislation. This is in accordance with well established rules of statutory construction.

"The statute in question (13–1591 ARS), which has been in effect since 1901 and applied by the courts for sixty years, specifically recognizes civil satisfaction in a misdemeanor charge based upon compromise of the civil rights and causes of action growing out of the same alleged negligent act of the defendant which forms the basis for the criminal charge. If such satisfaction is accomplished according to the provisions of this statute, then the action appropriately may be dismissed.

"The Court, upon the evidence and stipulation of facts entered into between the County Attorney and counsel for defendant, FINDS:

"That the widow and legal representative of the minor children of the decedent appeared before the court and acknowledged receipt of financial satisfaction and payment of damages for the injuries sustained and in compromise and settlement of all civil causes of action arising from the act in question; that the satisfaction and damages paid, as aforesaid, were fair and substantial in amount; that there was no criminal intent on the part of defendant in committing the act in question; that the death in question resulted solely from negligence on the part of defendant; and that the widow and said decedent requested that defendant not be prosecuted under the pending charge.

"IT IS ORDERED, therefore, that for the foregoing reasons the complaint

against defendant herein be and the same is hereby dismissed, pursuant to defendant's motion.

"DONE IN OPEN COURT this 10 day of August, 1961."

■ The state appealed. Ordinarily the state cannot appeal in a criminal case. State v. Wood, 94 Ariz. 357, 385 P.2d 229. The court below treated this motion as a motion to quash the information, and consequently, under A.R.S. § 13–1712, subsection 1 this case is now properly before this court. Rule 169, subd. A, par. 1(d), Rules of Criminal Procedure, 17 A.R.S.

■ The Attorney General argues that the compromise statute requires the person injured to appear in court to consent to the compromise, which obviously cannot be done when he is dead. The statute, § 13–1591, supra, however, in section 1, refers to "person injured" and section 2, requiring the court appearance, refers to "party injured." To give effect to the change in phraseology, we must hold that "party injured" refers to the "party" to the lawsuit, and consequently that appearance may properly be made by an attorney, regardless of the reason that the "person injured" may not appear in court.

In principle, civil suits and criminal prosecutions should be kept separate. The law should treat rich and poor alike, and the fact that a man might be able to pay for dam-ages due to his negligence should not save him from criminal prosecution. But in practice, this principle is not always applied in misdemeanors, and some states, Arizona among them, have adopted statutes similar to A.R.S. § 13–1591, supra, authorizing the dismissal of misdemeanor cases where the injured party has been compensated. Miller, "The Compromise of Criminal Cases," 1 Southern California L.Rev. 1.

New York was among the first states to adopt this policy. In 1817, under the predecessor of the present New York and Arizona statutes, a prosecution for assault and battery by throwing vitriol on two women was permitted to proceed although payment had been made in a manner customary under the statute for the damage to their clothes. In re Gilmore (John Gilmore's Case), 2 N.Y. City Hall Recorder 29. In those days cases were reported, at times, by a reporter who was present, and not in a written opinion by the court. In this case the reporter summarized the case as follows: "To cast spirits of vitriol, aqua fortis, or any other powerful acid substance, on the person or clothes of another, wantonly and maliciously, is *at least, an infamous crime*—and *ought to be made* felony by statute." (Emphasis in original). In 1830 the New York Supreme Court, the then court of last resort, in People v. Bishop, 5 Wend. 111, said: "An offence for an assault and battery or other misdemeanor, except in certain cases, may be compromised

either. before or after an indictment." The exceptions, however, were not enumerated by the court. At that time the New York statute had an exception for "infamous crimes". The exception was dropped in the later revisions, and has never appeared in the Arizona statute.

In 1849, the New York Commissioners on Practice and Pleading, in explaining the policy of the statute, said:

" 'There are many cases, which are technically public offences, but which are in reality rather of a private than a public nature, and where the public interests are better promoted by checking than by encouraging criminal prosecutions. Of this class are libels, and simple assaults and batteries; or those which according to section 731 [enacted as section 663], are not committed by or upon an officer of justice, while in the execution of the duties of his office, or riotously, or with an intent to commit a felony. With these exceptions, cases of this nature have by the policy of our statutes, always been considered fit subjects of compromise: 2 R.S. 3d ed. 815, 816, sec. 68–71; 1 R.L. of 1813, p. 499, sec. 19; a policy which has been carried by the courts, still further than the terms of the statute.' See Report of Commissioners on Practice and Pleadings, p. 339, submitted December 31, 1849." Historical Note,

N.Y. Code of Criminal Procedure, § 663.

The California Act, now California Penal Code, §§ 1377–1379, from which the Arizona statute was derived, was first adopted in 1850. The Arizona compromise statute was adopted in 1864. Ch. XI, secs. 644, 645, 646, 647, Howell Code. Other states with similar legislation include Alaska, Georgia, Louisiana, Montana, Oregon, Pennsylvania, Virginia and Wisconsin

Until modern traffic problems arose, manslaughter, as the lowest degree of homicide, was a felony in Arizona. Ch. X, sec. 22 et seq. Howell Code (1864). It was never thought that the taking of a human life could be paid for and forgotten.

"Misdemeanor Manslaughter" made its appearance in Arizona law with the adoption of A.R.S. § 28–691 in 1950. State v. Morf, 80 Ariz. 220, 295 P.2d 842, held that this statute in part repealed the former A.R.S. § 13–456 by implication, and the legislature enacted the present A.R.S. § 13–456, with its misdemeanor manslaughter provisions in 1957 and repealed A.R.S. § 28–691. On both occasions where the statute was before this court, the crime created was described as a "high misdemeanor", State v. Morf, supra; State v. Gordon, 79 Ariz. 184, 285 P.2d 758.

In the light of this history the problem presented to us here is whether the compromise statute, A.R.S. § 13–1712,

includes "high misdemeanors". The statute, A.R.S. § 13–103, divides crimes only into felonies and misdemeanors, and bases its classification on the term and place of imprisonment. The classification of misdemeanors as "high misdemeanors" or "misdemeanors" is a common law judicial classification. It is based on the seriousness of the crime and has nothing to do with the term or place of confinement or judgment. Arizona statutes make no distinction between high misdemeanors and mere misdemeanors. The legislature is presumed to have known of the compromise statute when it created misdemeanor manslaughter.

After the adoption of the Arizona compromise statute, courts in other states warned against the public evils of extending the compromise statute to all crimes which might be classed by statute as misdemeanors. See e. g. Commonwealth v. Heckman, 114 Pa.Super. 70, 172 A. 28 (1934).

The situation calls for clarification by the legislature. A bill which would specifically exclude misdemeanor manslaughter from the compromise statute is now pending before it. The present state of the law has this incongruous result. If a drunk or reckless driver does not hit anyone, he may go to jail (A.R.S. §§ 28–692, 28–693). If guilty, he cannot escape punishment. There is no "injured person" or "injured party" or possible "remedy by civil action," and the compromise statute may not be invoked. But if he damages property, hits someone, or even kills them, under the compromise statute he may completely escape criminal punishment by paying civil damages.

 We hold that the compromise statute includes "high misdemeanors" and is applicable in misdemeanor manslaughter cases, and the judgment below must be affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.