607 P.2d 1078

**In the Matter of Preston G. LUTZ, Respondent.**

No. 13385.

Supreme Court of Idaho.

March 12, 1980.

Linda L. Holdeman, Bar Counsel, Idaho State Bar, Boise, for appellant.

Byron J. Johnson, Boise, for respondent.

Before DONALDSON, C. J., BAKES, McFADDEN and BISTLINE, JJ., and SCOGGIN, J., Pro Tem.

PER CURIAM.

The respondent was recently here on another matter, where the disciplinary board of the Idaho State Bar recommended and this Court imposed a one month suspension. *See Matter of Lutz,* 100 Idaho 45, 592 P.2d 1362 (1979).[1]

### I.

Victor Cocotis, after being accused of driving while intoxicated (DWI), retained Lutz to handle both the criminal charge and his civil responsibility resulting from Cocotis' having struck a parked vehicle. Lutz negotiated with Lisa Scott, the owner of the vehicle, and paid her $157.88 in exchange for a release. The release, drafted by Lutz, contained a final paragraph which is the central issue in this proceeding:

"I covenant not to be a witness against or give testimony against the interest of Victor Cocotis in any civil or criminal proceeding which may involve or concern the facts of my loss or claim which is released hereby. . . ."

Lutz was unsuccessful in plea bargaining the DWI charge. Ryan Armbruster, the deputy city attorney, in making preparations for trial subpoenaed Scott to testify; she informed him of the covenant. Armbruster and Lutz met to discuss the covenant. Lutz insisted that Scott's covenant not to testify was binding, and that she might subject herself to civil liability if she testified. Armbruster warned Lutz that his conduct bordered on the obstruction of justice.

On February 6, 1978, the day before trial, Lutz withdrew as counsel based on his intention to testify concerning the Scott release, and another attorney appeared as counsel for Cocotis. The court rejected the argument that Scott's testimony was inadmissible, and she was allowed to testify.

Thereafter a written complaint was filed with the Idaho State Bar, following which the Bar's disciplinary counsel filed a petition of complaint against Lutz, charging him with six violations of disciplinary rules. A hearing committee of the Bar heard the case on June 29, 1978. (The members of the committee were purposely kept un-

---

1. In connection with his suspension Lutz was required to properly notify the various courts and his clients of his suspension. In supposed compliance therewith Lutz wrote the clerk of this Court:

"It is my duty to inform you that because of a client complaint lodged against me in 1977, it has been recommended by a Hearing Panel of the Idaho State Bar that I receive a private reprimand. However, after I appealed to the Idaho Supreme Court, the Supreme Court increased this penalty to a 30-day suspension from my law practice.

"I consider this harsh and unjust but I have no further relief inasmuch as I cannot afford an appeal to the U. S. Supreme Court, even though I have taken appeals for clients to the U. S. Supreme Court in the past.

"I am required by law to give this notice that due to Idaho Supreme Court Order Number 12942, dated April 2, 1979, the suspension imposed will be effective May 2, 1979, through June 2, 1979."

This letter with its manifest inaccuracies was referred to the Bar disciplinary board. We incorrectly assumed that the State Bar on investigation might initiate contempt proceedings. However, the manner of Lutz' compliance with our earlier order instead apparently came to the attention of the Bar disciplinary board in considering the present complaint against Lutz. In our function we reach our own determination; accordingly, because the manner of Lutz' compliance does not require our consideration in the matter now before us, we expressly have removed it from our consideration, thus closing the book on that particular question.

aware of the other complaint decided by this Court, *In re Lutz,* 100 Idaho 45, 592 P.2d 1362 (1979). The hearing committee found Lutz guilty of violating only one disciplinary rule, DR 1–102(A)(5), which proscribes "conduct that is prejudicial to the administration of justice." On November 14, 1978 that committee recommended that Lutz be given a private reprimand; the Bar disciplinary board scheduled a hearing for April 28, 1979. By that time our decision in the first Lutz matter had been announced, and Lutz' suspension commenced May 2, ending June 1, 1979. Prior to and at the hearing of the Bar disciplinary board on April 28, Lutz expressed his willingness to accept the private reprimand recommended by the hearing committee. In view of his prior disciplinary violation (of which the hearing committee had been unaware), disciplinary counsel for the Bar urged a heavier sanction.

The Bar disciplinary board adopted the findings of the hearing committee, that Lutz had violated DR 1–102(A)(5); it concluded that it was appropriate to consider Lutz' prior disciplinary offense, and recommended a sixty-day suspension, thirty days of which were to run concurrently with the previous suspension. It also recommended that Lutz be required to pay the costs normally assessed in such matters, such costs to be certified by cost bill in affidavit form.

## II.

Lutz has raised two objections to the findings and recommendation of the Bar disciplinary board. First, he contends that there is no basis in the record for the finding of the hearing committee, adopted by the disciplinary board, that Lutz was attempting to prevent Scott from testifying on matters other than the fact that Cocotis had paid her for damages to her automobile. The second objection is to any consideration of attorney fees in the recommendation of the Bar disciplinary board that Lutz "pay such costs as are normally assessed by the Disciplinary Board of the Idaho State Bar in such matters." [2]

Lutz first argues that his dealings with Scott, and the release he obtained from her, were a perfectly legitimate means of protecting his client's interests in the upcoming criminal trial on the DWI charge. Lutz argues that his use of the release to insure that Scott would not testify about the payment of $157.88 was in compromise of the civil claim against his client, and because the law favors compromises, it excludes evidence of compromise in civil and criminal cases. Lutz' claim is that he was simply attempting to make certain that any such testimony would be excluded.

Further, Lutz argues that since Scott was not a witness to the accident, any testimony which she could give as to Cocotis' alleged offense would be pure hearsay, and hence inadmissible—making it permissible to obtain the release covenant.

We find this line of argument unpersuasive. The wording of the release drafted by Lutz was not limited to inadmissible testimony; by its terms Scott agreed "not to be a witness against or give testimony against" Cocotis. Although Lutz might have clarified or narrowed this language in later dealings with Armbruster, and through him with Scott, it appears from the record that Lutz steadfastly continued to maintain that Scott because of this covenant was disabled from testifying *at all.* He continued to assert to Armbruster that Scott might be subjecting herself to civil liability if she testified. Under these circumstances the claim that he was merely reinforcing the rules of evidence is not credible.

Idaho law does provide for the compromise of misdemeanor charges under certain circumstances:

> "19–3401. *Compromise of offenses after satisfaction.*—When a defendant is held to answer on a charge of misdemeanor, for which the person injured by the act constituting the offense has a

---

2. We consider this issue as prematurely raised and do not pass upon it. The Bar recommendation did not mention attorney fees.

remedy by a civil action, the offense may be compromised as provided in the next section . . ..

"19–3402. *Leave of court required.* If the party injured appears before the court to which the depositions are required to be returned, at any time before trial, and acknowledges that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs incurred, order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom; but in such case the reasons for the order must be set forth therein, and entered on the minutes. The order is a bar to another prosecution for the same offense."

For examples of misdemeanor compromises under an almost identical statute in Arizona see *State v. Garoutte,* 95 Ariz. 234, 388 P.2d 809 (1964) (defendant charged with manslaughter in the negligent driving of an automobile, a misdemeanor) and *State ex rel. Schafer v. Fenton,* 104 Ariz. 160, 449 P.2d 939, 941 (1969) (defendant charged with P.W.I. (piloting while intoxicated)). In the second Arizona case the court appeared to be more influenced by a case from California:

"[I]t appears to us that the legislature had no intention of authorizing the compounding and dismissal of every misdemeanor in which there was some incidental damage to a private citizen. We are of the opinion that the legislature intended to include those misdemeanors in which by their very nature there is an overlapping of the civil remedy and the public remedy by way of prosecution for a crime. Thus in the case of an assault and battery since by its very definition a battery is a wilful and unlawful use of force or violence upon the person of another, the person injured would in almost every case have a civil action for damages. Similarly, since a theft is the unlawful taking of the property of another, the civil remedy of damages for conversion would almost always exist. Contrast the crime of excessive speed in an automobile. The crime may be committed without injury to the person or property of another. Or such injury may be the proximate result of the violation of the law which constitutes the crime. We do not believe that the legislature intended to rest this important matter of public policy upon the happenstance that in any particular case a private citizen might or might not suffer personal injury or property damage."

*People v. O'Rear,* 220 Cal.App.2d Supp. 927, 34 Cal.Rptr. 61, 63–64 (1963).

Our own understanding of the law regarding the compromise of misdemeanors is that even a proper compromise of Scott's claim against Cocotis should not have caused the court to dismiss the DWI charge. But we do not see in the record any indication that Lutz and Scott were negotiating for a compromise; quite the contrary, he obtained a covenant which, given effect, would have precluded her from testifying to the settlement reached.

The only remaining explanation of Lutz' behavior is that he was attempting to use the opportunity of the settlement of Scott's claim to influence her not to testify in the criminal case. Irrespective of whether or not Scott's testimony was admissible, the Bar committee and disciplinary board correctly found that Lutz' behavior was objectionable. Our legal system provides for the question of the admissibility of evidence to be passed upon by a court of law, through objections at trial, or through motions in limine. The rulings of the trial court are preceded by an opportunity for opposing counsel to object, and followed by an opportunity to appeal to higher courts. By drafting the "covenant not to testify" and by tenaciously clinging to its terms, Lutz attempted to short-circuit the judicial process, and in so doing was guilty of conduct prejudicial to the administration of justice.

It must be noted, however, that the record reveals no evidence that Lutz' conduct involved deceit or fraud. Lutz used exceedingly poor judgment, perhaps not so much in his initial drafting of the covenant as in his refusal to withdraw from his threat of action against Scott if she testified.

It being impossible that any part of a sixty day suspension can run concurrently with the previous thirty day suspension, we modify the recommendation of the Bar to the end that Preston G. Lutz is awarded a suspension from the practice of law for the period of one month, the period of suspension to commence as provided in Rule 168.