NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA,
*Appellant/Cross-Appellee*,

*v.*

DANIEL J. DERIENZO,
*Appellee/Cross-Appellant*.

No. 1 CA-CR 14-0707
FILED 10-22-2015

---

Appeal from the Superior Court in Yavapai County
No.  P1300CR201300070
The Honorable David L. Mackey, Judge

**AFFIRMED**

---

COUNSEL

Yavapai County Attorney's Office, Prescott
By Dennis M. McGrane
*Counsel for Appellant/Cross-Appellee*

Law Office of Daniel J. DeRienzo, Prescott Valley
By Daniel J. DeRienzo
*Appellee/Cross-Appellant*

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Maurice Portley joined.

**O R O Z C O**, Judge:

¶1        The State appeals the dismissal of a misdemeanor criminal damage charge filed against appellee/cross-appellant Daniel J. DeRienzo. The State argues the trial court erred when it dismissed the charge and that the dismissal violated provisions of the Victims' Bill of Rights.[1]  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        DeRienzo and C.W. formerly practiced law together.  After they dissolved their firm, they continued to operate separate practices in a building they and/or their separate business entities owned together.  This matter arose after DeRienzo removed a sign C.W. placed on the exterior of the building to advertise his law practice.  The State filed a complaint in justice court charging DeRienzo with misdemeanor criminal damage in violation of A.R.S. § 13-1602.A.1 (West 2015).[2]  Approximately five weeks after DeRienzo's arraignment in justice court, the State moved to dismiss the charges in justice court and, that same day, re-filed the matter in superior court.  The superior court ruled the case belonged in the justice court and dismissed the superior court case without prejudice.  The State appealed and we reversed, noting that "by statute and rule, [the State] may file misdemeanor actions in the superior court."  *State v. DeRienzo*, 1 CA-CR

---

[1]        Ariz. Const. Art. 2 § 2.1 (Victims' Bill of Rights); Arizona Revises Statutes (A.R.S.) section 13-4401, et seq. (Crime Victims' Rights).

[2]        A person commits criminal damage as charged in this case if the person recklessly defaces or damages the property of another.  A.R.S. § 13-1602.A.1.  If the damage is more than $250 but less than $1,000, as alleged in this case, the offense is a class 1 misdemeanor.  *See* A.R.S. § 13-1602.B.5.  Finally, absent material changes in the law, we cite the current versions of the applicable statutes.

13-0117, 2013 WL 5746209, at *2, ¶ 7 (Ariz. App. Oct. 22, 2013) (mem. decision).

**¶3**            After remand, DeRienzo filed a motion to dismiss pursuant to A.R.S. § 13-3981.C, which permits the dismissal of certain misdemeanor offenses if the victim receives "satisfaction for the injury[.]"  The trial court found C.W. received satisfaction and granted the motion.  The State now appeals.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 13-4031 and -4032.1 (West 2015).

## DISCUSSION

**¶4**            Under A.R.S. § 13-3981, a trial court may "compromise" and dismiss a misdemeanor offense with prejudice when the victim has a "remedy by a civil action," the victim appears in court and acknowledges receipt of "satisfaction" for the injury and the defendant pays costs, if any.  A.R.S. § 13-3981.A and C.[3]  The State argues the trial court erred when it dismissed the case pursuant to A.R.S. § 13-3981 because C.W. did not appear in court personally or through an attorney, did not agree to the "compromise" and did not otherwise acknowledge receipt of satisfaction.  The State further argues mere payment of damages constituted neither a "compromise" nor a "satisfaction" under the statute.

**¶5**            We review the grant of a motion to dismiss for abuse of discretion.  *State v. Pecard*, 196 Ariz. 371, 376, ¶ 24 (App. 1999).  The interpretation of a statute, however, is a question of law we review de novo.  *See Zamora v. Reinstein*, 185 Ariz. 272, 275 (1996).  When interpreting a statute, we attempt to fulfill the intent of the drafters.  *Id.*  We look to the plain language of the statute as the best indicator of that intent.  *Id.*  "[W]e apply a practical and commonsensical construction."  *State v. Alawy*, 198 Ariz. 363, 365, ¶ 8 (App. 2000).  We give the words and phrases of the statute their commonly accepted meaning unless the drafters provide special definitions or a special meaning is apparent from the context.  *State v. Barr*, 183 Ariz. 434, 438 (App. 1995).  If the language is clear and unambiguous, we give effect to that language and do not employ other methods of statutory construction.  *State v. Riggs*, 189 Ariz. 327, 333 (1997).

### A.     Background

**¶6**            We first clarify the record to put the issue and the trial court's ruling in context.  When the matter was still pending in the justice court, the State informed the court that DeRienzo had reimbursed C.W. for his

---

[3]       The exceptions do not apply here.  *See* A.R.S. § 13-3981.A and B.

damages. At a hearing in the superior court seven months later, DeRienzo informed the court that he would subpoena C.W. to appear at the next hearing if the State would not have C.W. formally acknowledge in court that DeRienzo had reimbursed C.W. for his damages. The State told the court DeRienzo's position was not unreasonable and stated it would "check with [C.W.] to get his statement." Fifteen days later, DeRienzo filed his motion to dismiss pursuant to A.R.S. § 13-3981. The State's response again acknowledged DeRienzo had reimbursed C.W. for his damages. The State also informed the court that C.W. did not want to appear in court.

¶7 At the hearing on the motion, the State again informed the court that even though DeRienzo had paid C.W.'s damages, it would not agree to a resolution based only on reimbursement for damages. The State claimed C.W. was "uncomfortable" with such a compromise because it would result in the dismissal of a criminal matter based on the payment of money. In addition to the damages, the State wanted DeRienzo to give C.W. a written apology approved by the court and to report himself to the state bar. There is nothing in the record, however, to suggest C.W. sought, agreed to or was even aware of these additional terms.

¶8 The trial court noted that in addition to the State's acknowledgements, it had a transcript from a hearing in the justice court in which an attorney appeared on behalf of C.W. and informed the justice court that DeRienzo had reimbursed C.W. for his damages.[4] The State did not dispute this occurred. The court then inquired if the State believed C.W. or C.W.'s attorney must physically appear in court and announce that C.W. had been reimbursed for damages, especially if C.W.'s attorney already appeared on behalf of C.W. in the justice court. The State responded that while A.R.S. § 13-3981 required the victim or his attorney to appear in court, it was not necessary in this case because the State would avow that C.W. confirmed DeRienzo reimbursed him. The State reiterated that C.W. did not want to appear in court.

¶9 At the conclusion of the hearing, the trial court held the offense of criminal damage "fits squarely within the legislative intent" of A.R.S. § 13-3981 and that each factor necessary for dismissal pursuant to that section was present. The court found the remedy available in a civil action involving criminal damage to property is payment for the value of

---

[4] That transcript is not contained in the record on appeal. We presume it supports the decision of the trial court. *See State v. Mendoza*, 181 Ariz. 472, 474 (App. 1995).

the lost or damaged property, not letters of apology or self-reporting to the state bar. The court held it was "clear" that C.W. acknowledged in the justice court that he had received payment for the sign. Finally, the court held this payment constituted satisfaction as contemplated by the statute. The court then granted the motion to dismiss.

B.     Dismissal of the Charges

**¶10**     The trial court did not abuse its discretion when it dismissed the case under these circumstances. All of the elements necessary for dismissal pursuant to A.R.S. § 13-3981.C were present. This was a misdemeanor offense for which C.W. had a civil remedy by way of monetary compensation for the value of damage to or loss of the sign, not a letter of apology or self-reporting to the state bar.

**¶11**     As noted above, there is nothing in the record to suggest C.W. sought or was aware the State would seek these additional terms. While C.W.'s "appearance" in the court was not the straightforward event suggested by the statute, the State did not dispute that an attorney appeared on behalf of C.W. in the justice court and acknowledged that DeRienzo had reimbursed C.W. for his damages. That the matter was no longer pending in the justice court when the superior court ultimately dismissed the case is of no matter; C.W.'s attorney made it known to the justice court that C.W. had been reimbursed. C.W. did not become "unreimbursed" or otherwise insufficiently reimbursed when the State elected to refile the case in superior court. Further, once the State refiled the matter in superior court, the State repeatedly informed the court not only that DeRienzo had reimbursed C.W. for his damages, but that C.W. did not wish to appear in court. When DeRienzo advised he would subpoena C.W. to appear in court, the State said it was not necessary. When the court asked the State if C.W. or C.W.'s attorney had to physically appear, especially since C.W.'s attorney appeared in the justice court, the State told the court it was not necessary. Given the State's position and representations to the court throughout the proceedings, this matter warranted dismissal even if one does not consider the appearance of C.W.'s attorney in the justice court.

**¶12**     Regarding the argument there was neither a "compromise" nor "satisfaction," the State's proffered definitions of "compromise" and "satisfaction" from various dictionaries are of no matter. While A.R.S. § 13-3981 uses the term "compromise" in the title and in subsection A, it is subsection C that defines when a court may dismiss the prosecution and subsection C makes no reference to the term "compromise." Further, one must consider the phrase "satisfaction for the injury" as used in subsection

C in the context of a misdemeanor offense for which the victim has a remedy by a civil action as identified in subsection A. As noted above, the civil remedy for damage to property (the injury) is compensation for the value of the damage or loss. It was well within the trial court's discretion to find that reimbursement of C.W. for the full amount of his damages constituted "satisfaction" for those damages as contemplated by subsection C. That C.W. may or may not have felt a personal sense of "satisfaction" with the result is irrelevant. That C.W. allegedly did not agree to the dismissal is also of no matter. There is nothing in A.R.S. § 13-3981 that requires C.W. to agree to the dismissal, only that C.W. acknowledge satisfaction for an injury for which there is a remedy by a civil action.[5]

¶13 Finally, the State complains the trial court allowed DeRienzo "to buy his way out of a criminal prosecution[,]" and that this "sets a dangerous precedent." In support of this, the State quotes *State v. Garoutte:* "The law should treat rich and poor alike, and the fact that a man might be able to pay for damages due to his negligence should not save him from criminal prosecution." *State v. Garoutte*, 95 Ariz. 234, 237 (1964). The State, however, omitted the sentences that preceded and followed the quoted language. The entire passage reads,

> In principal, civil suits and criminal prosecutions should be kept separate. The law should treat rich and poor alike, and the fact that a man might be able to pay for damages due to his negligence should not save him from criminal prosecution. But in practice, this principle is not always applied in misdemeanors, and some states, Arizona among them, have adopted statutes similar to [the predecessor of A.R.S. § 13-3981] authorizing the dismissal of misdemeanor cases where the injured party has been compensated.

*Id*. Thus, even *Garoutte* recognized that there are situations where it is appropriate to resolve misdemeanor charges involving property damage through payment of damages rather than full blown, protracted

---

[5] We note the State's inconsistency on appeal when it addresses the effect of the prosecutors' representations to the trial court regarding C.W. The State argues the prosecutors' repeated representations to the trial court that DeRienzo reimbursed C.W. were mere "personal observations" of the prosecutors that were not sufficient to establish C.W. was satisfied as contemplated by the statute. The State also argues, however, that a prosecutor's representation to the court that C.W. allegedly did not consent to the dismissal was sufficient to establish the absence of consent.

prosecution followed by judicially imposed punishment. The State also emphasizes *Garoutte's* reference to "negligence" in the quoted language to support the proposition that A.R.S. § 13-3981 does not or should not apply to reckless or intentional acts. Section 13-3981 makes no distinction based on the applicable mens rea of a misdemeanor offense and we will not create such a distinction or exception.

C.    The "Victims' Bill of Rights"

¶14    The State next contends the trial court violated the "victims' bill of rights" when it dismissed the case. The State further alleges that if we find dismissal pursuant to A.R.S. § 13-3981 does not require a victim's consent, the statute conflicts with the victims' bill of rights and is unconstitutional.

¶15    The rights of a crime victim are not contained in a single "bill of rights," but are contained in both the Arizona Constitution and Chapter 40 of the criminal code. *See* Ariz. Const. Art. 2 § 2.1 (Victims' bill of rights); A.R.S. § 13-4401, et seq. (Crime Victims' Rights). Regardless, the sole provision of the "bill of rights" the State relies upon is the provision found in the Arizona Constitution that provides, "a victim of crime has a right: (1) To be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)1.

¶16    We find no error. There is nothing in the record before us which suggests the trial court or any party failed to treat C.W. with fairness, respect and dignity, or that C.W. suffered intimidation, harassment or abuse. Although the State contends dismissal without C.W.'s consent in and of itself violated the above provision, there is nothing in this or any other provision of the "bill of rights" to suggest a victim must consent or is entitled to give consent to the dismissal of a criminal prosecution. In fact, C.W.'s rights identified in A.R.S. § 13-4419 expressly provide that a victim does not have the authority to direct the prosecution of a case. A.R.S. § 13-4419.C.

**¶17**　　　　Further, because a victim does not have the right to consent to dismissal of a case and dismissal pursuant to A.R.S. § 13-3981 does not require a victim's consent, there is no conflict between A.R.S. § 13-3981 and any victim's rights under Arizona law.　Because we affirm, we need not address the issues DeRienzo presents on cross-appeal.

## CONCLUSION

**¶18**　　　　Finding no error, we affirm the decision of the trial court.



Ruth A. Willingham · Clerk of the Court
FILED: ama