No. 26          May 21, 2026          293

IN THE SUPREME COURT OF THE
STATE OF OREGON

In re Complaint as to the Conduct of

Derek J. ASHTON,
OSB No. 871552,
*Respondent.*

(OSB 2202) (SC S071535)

En Banc

On review of the decision of a trial panel of the Disciplinary Board.*

Argued and submitted November 18, 2025.

C. Robert Steringer, Harrang Long P.C., Portland, argued the cause and filed the briefs for respondent. Also on the briefs were Arden J. Olson, and Julian W. Marrs.

Courtney C. Dippel, Disciplinary Counsel, Tigard, argued the cause and filed the brief on behalf of the Oregon State Bar. Also on the brief was Samuel Leineweber, Assistant Disciplinary Counsel

PER CURIAM

Respondent is suspended from the practice of law for 30 days, commencing 60 days from the date of this decision.

_____

* Corrected trial panel opinion dated November 14, 2024.

## PER CURIAM

In this lawyer disciplinary proceeding, a trial panel of the Disciplinary Board found that respondent Derek J. Ashton committed three violations of Rule of Professional Conduct (RPC) 3.4(b) (prohibiting a lawyer from paying, offering to pay, or acquiescing in the payment of compensation to a witness contingent on the content of the witness's testimony or the outcome of a case), one violation of RPC 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), and two violations of RPC 8.4(a)(4) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice). The trial panel suspended respondent from the practice of law for 60 days.

In its request for review, the Oregon State Bar challenges only the sanction that the trial panel imposed and asks this court to suspend respondent for at least six months. In his answering brief, respondent challenges the trial panel's findings that he committed the charged violations. BR 10.5(1) (permitting opposing litigants to raise additional issues in answering briefs). In addition, respondent contends that, if this court concludes that he did commit some or all of the offenses as found by the trial panel, then a sanction ranging from a public reprimand to a 60-day suspension is appropriate. For the reasons that follow, we conclude that respondent did not violate RPC 3.4(b) as alleged in the Bar's complaint. We find that respondent committed one violation of RPC 3.4(c) and two violations of RPC 8.4(a)(4), and we conclude that a 30-day suspension is an appropriate sanction for respondent's misconduct.

## I.   BACKGROUND

In lawyer disciplinary proceedings, we review the record *de novo*. Bar Rules of Procedure (BR) 10.6. On *de novo* review, this court sits as factfinder based on the record developed by the trial panel; that record must demonstrate that the Bar has proved each violation by clear and convincing evidence. BR 5.2. Having reviewed the record and considered the parties' arguments, we may adopt, modify, or reject the decision of the trial panel. BR 10.6.

In 2015, respondent represented a client, Bean, in a high-profile criminal case in which the client was alleged to have had sex with a minor, G, in 2013 (the 2013 incident). During the course of his representation of Bean in the criminal matter, respondent learned that G's mother had retained a lawyer, Lori Deveny, to pursue a civil claim against Bean relating to the 2013 incident. In May 2015, respondent talked to Deveny about the possibility of resolving the criminal case and G's civil claims against Bean through a civil compromise.[1] Negotiations to that end proceeded, and the parties scheduled a mediation session for June 10, 2015. In preparation for that mediation, respondent drafted a proposed settlement agreement. At the mediation, the parties agreed on a $200,000 settlement payment. Respondent updated the draft and presented it to the mediator, and the draft was signed on June 10, 2015, by G, G's mother, and Deveny, and by Bean and respondent.[2] That settlement agreement, entitled "Confidential Settlement Agreement, Release, Civil Compromise, and Covenant Not to Sue" (June settlement agreement), provided that, in exchange for $200,000, G would release "any and all claims—civil and/or criminal—against [Bean] that were or could have been asserted related to the [2013 incident]." The June settlement agreement acknowledged that G did not "want the State of Oregon *** to criminally prosecute" Bean and that G understood that that agreement would "operate as a civil compromise of any/all criminal charges related to the [2013 incident]."

The June settlement agreement also included several provisions purporting to limit G's ability to testify in future legal proceedings about Bean's involvement in the 2013 incident, including requiring G (1) to "release, covenant and agree forever to refrain from instituting, prosecuting, claiming, testifying, or asserting he/they have the basis for any action, claim or proceeding—civil and/or criminal—against Bean related to [the 2013 incident]"; (2) "not to ever

---

[1]  A civil compromise is a procedural mechanism by which a criminal defendant seeks dismissal of criminal charges based on a civil settlement with the victim. Civil compromises are subject to court approval under ORS 135.705(1)(a).

[2] As we explain later in the opinion, although that settlement agreement—and two subsequent settlement agreements—appeared to have been signed by G and his mother, G later claimed that he had not signed any of them.

claim, assert, or testify that Bean engaged or attempted to engage in tortious, criminal, and/or unlawful activity related to [the 2013 incident]"; and (3) to "never again assert, claim, testify, prosecute, or institute any action against Bean, regarding claims alleged or which could have been alleged related to [the 2013 incident]." None of those provisions excluded circumstances in which G may be ordered to testify by a court or quasi-judicial authority.

Respondent filed a motion with the trial court to approve the civil compromise, asking the court to dismiss the criminal case against Bean under ORS 135.703 (permitting compromise of certain crimes) and attaching a declaration from G that he had received full satisfaction for his alleged damages and injuries and did not want the state to prosecute Bean. The state opposed the motion, and the trial court denied it. All parties understood that the June settlement agreement would be void if the trial court denied the motion to approve the civil compromise, and, therefore, Bean made no payment to G under that agreement.

Subsequently, the parties attended a status conference with the trial court judge assigned to Bean's criminal case. During that conference, Deveny informed the court that G was reluctant to participate in the criminal case and that he would not accept service of a trial court subpoena. She also informed the court that, if he were served, G would move to quash the subpoena in California, where he then lived. The prosecutor acknowledged that G was an uncooperative witness, but he informed the court that the state planned to proceed with the prosecution and to find and serve G in California. The court set the trial for August 11, 2015.

In the meantime, Deveny continued to threaten to file a civil complaint against Bean on G's behalf. Respondent met with Deveny in her office in an effort to persuade her to delay filing the complaint until after the criminal trial had concluded. Deveny told respondent that she would file the civil complaint within days unless Bean agreed to pay G $200,000. Respondent explained to Deveny that Bean could not settle G's civil claims before the criminal trial because settlement agreements on behalf of minors require probate court approval under ORCP 27 I and seeking that approval

would place details of the settlement in the public record, which, in turn, could prejudice Bean's defense in the criminal trial. During the conversation, Deveny told respondent that G had an immediate need for money because he was suicidal and urgently needed mental health treatment but that he could not obtain treatment because he did not have health insurance. At the end of that meeting, Deveny repeated that she had a civil complaint ready to file unless Bean agreed to settle immediately.

According to respondent, after that meeting, he tried to think of ways to meet Deveny's demands that did not require a public filing with the probate court. Respondent wanted to delay the filing of any civil complaint until after the criminal trial because he was concerned that a civil suit would prejudice Bean's defense by revealing facts that were not known to prosecutors and that a civil complaint would generate publicity that could taint the jury pool. Respondent then proposed to Deveny that Bean would pay G $20,000 to settle only G's economic damages claims for past and future mental health evaluation and treatment related to the 2013 incident, and, in exchange, G would postpone filing a civil complaint seeking other damages until the criminal trial had concluded.[3]

Deveny agreed to that proposal, and, on July 20, 2015, respondent drafted, and the parties executed, a settlement agreement entitled "Confidential Settlement Agreement, Release, and Limited Covenant Not to Sue" (July settlement agreement). Like the June settlement agreement, the July settlement agreement purported to restrict G's ability to testify in future legal proceedings. Also similarly, the July settlement agreement provided, among other things, that G would (1) "forever * * * refrain from instituting, prosecuting, claiming, testifying, or asserting he/they have the basis for any action, claim or proceeding for economic damages for past and future mental health evaluation and treatment against [Bean] related to events alleged to have occurred

---

[3] Respondent testified that he proposed paying G $20,000 specifically, because he estimated that that amount would cover G's mental health treatment and because a settlement of less than $25,000 did not require probate court approval.

[in the 2013 incident]"; (2) "not * * * ever claim, assert, or testify that [Bean] engaged or attempted to engage in tortious conduct resulting in [G's] need for past and future mental health evaluation and treatment related to [the 2013 incident]"; and (3) "never again assert, claim, testify, prosecute, or institute any action against [Bean] for economic damages for past and future mental health evaluation and treatment related to claims alleged or which could have been alleged related to [the 2013 incident]." After the July settlement agreement was signed, respondent's law firm wired $20,000 to Deveny's lawyer trust account.

Also in July 2015, the prosecutor in Bean's criminal case notified respondent and Deveny that he planned to serve G in California with a subpoena to appear at Bean's criminal trial. Deveny then set in motion a plan to secrete G at a cabin in Oregon to evade law enforcement. G and his mother hid in the Oregon cabin for about a week, and police were unable to locate and serve G with the subpoena. The state then moved to continue the August 11 trial date. Deveny and respondent opposed the motion and asked the court instead to dismiss the case with prejudice. The court set the trial over until September 1, 2015, to give the police more time to locate and serve G. Ultimately, G decided to stop evading service and accepted service of a subpoena to appear at Bean's criminal trial.

G was suffering from severe mental health problems at the time, including feeling suicidal. Deveny and G met with the prosecutor in Bean's criminal case and told him of G's mental health struggles and that G did not want to participate in the criminal case and would return to and remain in California despite the subpoena. The prosecutor told G that the state would not issue a material witness arrest warrant to force him to appear if he were to ignore the subpoena.

The day before the trial was scheduled to begin, Deveny called the prosecutor and confirmed that G would not appear. On the morning of September 1, the date set for the trial, respondent emailed Deveny about the possibility that the court would dismiss the criminal case, and he told Deveny that, if the case were dismissed, Bean wanted to settle the civil claim. Later that morning, the parties

appeared at a hearing before the trial court judge, and the state informed the court that it was not ready to proceed. The court then orally dismissed the charges against Bean without prejudice, and it entered a general judgment of dismissal later that day.

After the hearing, respondent and Deveny agreed to settle G's civil case for $200,000, and respondent prepared another draft agreement (the September settlement agreement). Respondent testified that he had prepared the September settlement agreement in about five minutes, editing the June settlement agreement to reflect that the "criminal indictment was dismissed on September 1, 2015" and that the $200,000 would be transferred on or before September 8, 2015.[4] However, respondent did not materially change the name of the agreement, and the September settlement agreement continued to indicate that it was a civil compromise agreement even though the criminal case had been dismissed. In addition, respondent did not change virtually any of the terms of the June settlement agreement, and, therefore, like the June settlement agreement, the September settlement agreement repeatedly referenced the criminal charges. Importantly, like the June settlement agreement, the September settlement agreement conditioned payment of the settlement funds on G's agreement not to testify in future legal proceedings about Bean's involvement in the 2013 incident without excluding circumstances in which G is ordered to testify by a court or quasi-judicial authority.

Deveny provided respondent with a copy of the September settlement agreement that included the signatures of G and his mother dated September 2, 2015, and on September 8, respondent's law firm wired $200,000 to Deveny's lawyer trust account. Deveny did not seek approval of the September settlement agreement from the probate court under ORCP 27 I.

Three years later, in 2018, it came to light that Deveny, in an elaborate scheme executed over many years,

---

[4] Respondent states in his brief to this court that he also made a few other minor wording changes to the June settlement agreement. The Bar's brief details all the changes made to the June settlement agreement, confirming respondent's statement that the other changes were minor.

had stolen millions of dollars from her clients' settlement funds. She was eventually convicted of state and federal criminal charges and sentenced to prison, and she resigned from the Bar under threat of disbarment after the Bar became aware of her misconduct.[5]

In July 2018, G read a news article about Deveny's resignation from the Bar and her embezzlement of client funds. He telephoned respondent to talk about the matter. G denied having ever signed settlement agreements with Bean, and he expressed concern that Deveny had stolen his settlement money. Respondent then mailed G copies of the three settlement agreements. In a subsequent phone call, G told respondent that he had not seen or signed the July or September settlement agreement and had not received any money from Deveny. Respondent advised G to contact the police and the Bar.

In August 2018, G and his father called the Portland police and reported that Deveny had stolen money from him. Police conducted a criminal investigation and, in the course of that investigation, began to look more closely at the 2015 criminal case against Bean, the three settlement agreements, and Deveny's efforts to assist G in avoiding testifying. In October 2018, G learned conclusively that Deveny had stolen the settlement money from him, and he retained new lawyers to file a federal lawsuit against Bean related to the 2013 incident. And, in late 2018, G informed prosecutors that he wanted to pursue prosecution of the sex crimes against Bean. In January 2019, the Lane County District Attorney's Office refiled criminal charges against Bean.

Respondent at first continued to represent Bean in the 2019 criminal case, but, unbeknownst to respondent, the police had also begun investigating him for his alleged role in the scheme to help G evade service of the subpoena.

---

[5] Deveny was convicted of federal crimes and sentenced in federal court to nearly 8.5 years in prison for cheating more than 135 clients out of more than $3.8 million, and she was convicted of state crimes in state court and sentenced to 14 years for stealing $1.8 million from 36 clients. In respondent's disciplinary proceeding, the Bar stipulated that Deveny had perpetrated the "worst series of frauds in the history of the Oregon State Bar" and that Deveny had "proven to be the most prolific liar and fraud in the history of the Oregon State Bar."

In the course of that investigation, police met several times with Deveny. She admitted her role in secreting G at the Oregon cabin, and she made several statements to the police implicating respondent in the scheme. In June 2019, respondent learned that the police were investigating him, and, soon thereafter, he withdrew from his representation of Bean. New counsel took over Bean's defense. In October 2019, respondent was arrested and charged with having committed "computer crime" under ORS 164.377(2) related to his drafting of the September settlement agreement.[6]

In February 2021, respondent offered to plead guilty to contempt of court in exchange for dismissal of the computer crime charge. The prosecutor accepted the plea offer, and, in May 2021, respondent filed a "Petition to Admit Contempt of Court."[7] In that document, respondent admitted that he had engaged in "contempt of court as alleged in Count 1 of the Information," which provided:

> "On or about September 4, 2015, [respondent] willfully resisted the court's authority *** by negligently drafting a civil settlement agreement after the dismissal of a criminal case that included language copied from a global settlement agreement related to a proposed civil compromise of the criminal case, where the copied language purported to foreclose a party's ability to cooperate with a potential future prosecution and where the proposed civil compromise had been previously denied by the court."

The petition further stated that the parties had agreed that respondent's lawyer had provided the District Attorney with

---

[6] ORS 164.377(2) provides:

"Any person commits computer crime who knowingly accesses, attempts to access or uses, or attempts to use, any computer, computer system, computer network or any part thereof for the purpose of:

"(a) Devising or executing any scheme or artifice to defraud;

"(b) Obtaining money, property or services by means of false or fraudulent pretenses, representations or promises; or

"(c) Committing theft, including, but not limited to, theft of proprietary information or theft of an intimate image."

[7] Respondent was charged under ORS 33.015(2). As relevant here, ORS 33.015(2) provides that a person commits "contempt of court" if the person willfully commits an act of "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."

"written, verifiable information that shows that ***
[respondent's] actions in drafting the settlement agree-
ment to resolve the civil claims following the dismissal of
the underlying criminal case represented an isolated act
of negligence and were not part of a pattern or practice
related to multiple alleged victims, and were not a deliber-
ate attempt designed to deprive any alleged criminal vic-
tim of their right to testify, and were not an intentional
effort to deprive, impede, or interfere with the State's abil-
ity to call a witness at trial in a criminal case."

The prosecutor acknowledged the foregoing in a docu-
ment filed with the trial court, and the trial court entered
a general judgment finding respondent "[i]n contempt" for
"Contempt of Court/Punitive—Finding in Contempt Count
1." The court sentenced respondent to 40 hours of commu-
nity service.

In January 2022 the state moved to dismiss Bean's
criminal case on the ground that G "wish[ed] this office to
resolve the pending matters against the defendant without a
conviction in the case at bar." The court granted the motion
and dismissed the case.

The Bar filed a formal complaint against respon-
dent in 2023 and an amended complaint in 2024, alleging
multiple violations of the Rules of Professional Conduct. As
relevant here, the Bar alleged that respondent's conduct in
connection with the three settlement agreements violated
RPC 3.4(b), which prohibits a lawyer from "acquiesce[ing] in
payment of compensation to a witness contingent upon the
content of the witness's testimony," because the agreements
promised payments to G for his agreement never to testify
about the 2013 incident. The Bar also alleged that the same
conduct violated RPC 8.4(a)(4) because it was prejudicial to
the administration of justice. In addition, the Bar alleged
that respondent violated RPC 3.4(c), which prohibits a law-
yer from "knowingly disobeying an obligation under the
rules of a tribunal," because, after the circuit court issued
its order denying the motion to civilly compromise the 2015
criminal charges against Bean, respondent drafted the
September settlement agreement and thereby facilitated a
$200,000 settlement payment to G based on terms similar
to the civil compromise agreement that the trial court had

rejected. The Bar also alleged that that conduct violated RPC 8.4(a)(4).[8]

The trial panel found that respondent had committed three violations of RPC 3.4(b) and one violation of RPC 8.4(a)(4) by offering or acquiescing in the payment of compensation to G contingent upon the content of his testimony and by engaging in conduct prejudicial to the administration of justice in drafting and offering three settlement agreements that contained provisions conditioning payment of settlement funds on G's agreement not to testify in future legal proceedings against Bean relating to the 2013 charges. In addition, the trial panel found that respondent had knowingly disobeyed an obligation under the rules of a tribunal in violation of RPC 3.4(c) in light of his guilty plea and conviction in 2021 for contempt of court based on the September settlement agreement, and that he engaged in conduct prejudicial to the administration of justice in violation of RPC 8.4(a)(4) based on that same conduct. For those violations, the trial panel suspended respondent from the practice of law for 60 days.

The Bar requests that this court adopt the trial panel's findings that respondent committed three violations of RPC 3.4(b), one violation of RPC 3.4(c), and two violations of RPC 8.4(a)(4), but it asks us to reject the trial panel's determination that a 60-day suspension is the appropriate sanction for respondent's misconduct and, instead, to suspend him for no less than six months. Respondent, for his part, contends that none of the three settlement agreements violated RPC 3.4(b) or RPC 8.4(a)(4), because none of those agreements contained an offer to pay G money "contingent on the content" of his testimony at a future legal proceeding. Respondent also contends that the trial panel erred in concluding that he violated RPC 3.4(c) and RPC 8.4(a)(4) by

---

[8] In addition to those allegations, the Bar alleged that, during the course of respondent's representation of Bean, in violation of RPCs 3.4(f), 8.4(a)(1), 8.4(a)(2), and 8.4(a)(3), respondent bribed G by facilitating a payment to Deveny that was intended to help her hide G from law enforcement and avoid service of a trial subpoena on G in Bean's criminal case. The trial panel found that the Bar had not proved those allegations by clear and convincing evidence and the Bar does not challenge that ruling in this proceeding. We therefore do not need to—and do not—detail the Bar's allegations or explain the trial panel's ruling with respect to those charges in this opinion.

knowingly disobeying a court order, because the District Attorney stipulated that respondent had not "knowingly" disobeyed a court order. Finally, respondent argues that, if this court concludes that he committed all the violations found by the trial panel, then, at most, a 60-day suspension is appropriate.

## II.   ANALYSIS

A.   *RPC 3.4(b), Prohibiting Offering to Pay or Acquiescing in Payment of Compensation to a Witness Contingent Upon the Content of the Witness's Testimony or Outcome of the Case*

RPC 3.4(b) provides that a lawyer shall not

"falsify evidence; counsel or assist a witness to testify falsely; offer an inducement to a witness that is prohibited by law; or pay, offer to pay, or acquiesce in payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case; except that a lawyer may advance, guarantee or acquiesce in the payment of [certain expenses, none of which is involved here]."

In its amended formal complaint, the Bar alleged that, in drafting the three settlement agreements, respondent "acquiesced in payment of compensation to a witness contingent upon the content of the witness's testimony or outcome of the case" in violation of RPC 3.4(b). In finding that respondent had committed the three violations of RPC 3.4(b), the trial panel stated that "[i]t is a *per se* violation of RPC 3.4(b) for a lawyer to include in a settlement agreement a provision that purports to pay compensation to a witness in exchange for the witness's agreement not to testify in a future legal proceeding." The trial panel found that respondent had committed those violations of that rule by drafting and proposing provisions in the June, July, and September settlement agreements that required G to agree never to testify against Bean relating to the 2013 incident.

Respondent had argued that the settlement agreement did not contain terms that made payment "contingent on the content" of G's testimony, because the payment to G did not depend on what G would say or whether a specific case were resolved in a certain way. Rather, respondent had

argued, the agreements prohibited G from testifying at all about Bean's conduct. The trial panel rejected that argument on the ground that "[t]hat simply cannot be," because it would "make a mockery of RPC 3.4(b) and undermine the spirit and purpose of the disciplinary rules." In support of its finding, the trial panel cited *In re Boothe*, 303 Or 643, 653, 740 P3d 785 (1987), for the proposition that attempting to induce a witness not to testify violates the disciplinary rules.

The Bar concurs in the trial panel's conclusion. Respondent, for his part, reprises his argument that he did not violate RPC 3.4(b) as alleged in the complaint, because the settlement agreements did not include provisions making payment to G contingent on the content of his testimony in violation of RPC 3.4(b). Respondent argues that the rule is intended to prohibit lawyers from paying or offering money to a witness in return for specific witness testimony—in other words, it is intended to prohibit a lawyer from buying a witness's testimony—and that is not what the settlement agreements here do.[9]

The parties' arguments and the trial panel's opinion reflect a disagreement over the meaning of the phrase, in RPC 3.4(b), "contingent upon the content of the witness's testimony." As noted, respondent argues that the provisions in the settlement agreements that condition payment on G's agreement not to testify are not "contingent upon the content of the witness's testimony" because they are not contingent on what G would say at trial. In other words, respondent contends, an agreement is only contingent on the "content" of a witness's testimony if the witness promises to testify in a certain way in a future proceeding, and none of the settlement agreements that respondent drafted contained such

---

[9] Respondent further contends that RPC 3.4(b) does not prohibit agreements between parties that are intended to secure a global agreement to settle all claims related to a particular event. He argues that the inclusion of the word "testify" in the agreements he drafted simply supported the parties' intended dismissal of all claims and the anticipated dismissal of all criminal charges to which any such testimony could have been relevant. Respondent explains at length why, in his view, none of the settlement agreements violates RPC 3.4(b). We do not need to recount or address those arguments here, because, as we explain in the text, we conclude that the Bar has not shown by clear and convincing evidence that any of the settlement agreements made payment to G "contingent on the content" of his testimony.

a provision. Therefore, he contends, the settlement agreements do not violate RPC 3.4(b).

The Bar does not address the meaning of the phrase "contingent on the content" of the witness's testimony. Rather, it explains that RPC 3.4(b) was designed to prohibit lawyers from improperly influencing witnesses, and it cites *Boothe* for the proposition that an effort to induce a witness not testify is unethical. In addition, the Bar cites a Washington Supreme Court case, *In re Disciplinary Proceeding Against Bonet*, 144 Wash 2d 502, 514, 29 P3d 1242, 1248-49 (2001), in which that court held that it was a violation of the Washington Rule of Professional Conduct (Washington RPC) 3.4(b) to offer an inducement to a witness in order to influence a witness not to testify.

As we will explain, we agree with respondent that he did not offer an inducement that was "contingent on the content" of G's testimony within the meaning of that phrase in RPC 3.4(b). However, that does not mean that offering an inducement to a witness not to testify at all is not a violation of the disciplinary rules. Offering an inducement to a witness not to testify in a future legal proceeding may well violate other parts of RPC 3.4(b) or even other disciplinary rules, but the Bar did not charge respondent with violating those provisions.

This court has not previously interpreted RPC 3.4(b). We have stated that, when interpreting a disciplinary rule, the court looks to "'the wording of the rule, read in context.'" *In re Harris*, 366 Or 475, 483, 466 P3d 22 (2020), quoting *In re Hostetter*, 348 Or 574, 583, 238 P3d 13 (2010). The court also considers any interpretive guidance from its prior case law. *In re Duboff*, 370 Or 720, 727, 525 P3d 62 (2023). And finally, when a Rule of Professional Conduct is modeled after an American Bar Association Model Rule of Professional Conduct, we look to the Model Rule commentary as "persuasive in interpreting the meaning of" the rule at issue. *Id.* at 726.

We observe that RPC 3.4(b) may be violated in four ways: the rule prohibits a lawyer from (1) falsifying evidence; (2) counseling or assisting a witness to testify falsely;

(3) offering an inducement to a witness that is prohibited by law; and (4) paying, offering to pay, or acquiescing in payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case. As noted, the Bar charged respondent with violating RPC 3.4(b) by "acquiesc[ing] in payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case." As the parties' arguments suggest, whether respondent committed the charged violation depends on the meaning of the phrase "contingent on the content."

The definition of the words "contingent" and "content" support respondent's argument that the phrase "contingent upon the content of the witness's testimony" is concerned with prohibiting a lawyer from paying a witness to testify in a certain way. As relevant here, the word "contingent" means "dependent on, associated with, or conditioned by something else." *Webster's Third New Int'l Dictionary* 493 (unabridged ed 2002). The word "content," as relevant here, is defined as the "topics, ideas, facts, or statements in a book, document, or letter" or "the matter esp. of a book or discourse : SUBJECT MATTER, SUBSTANCE." *Id.* at 492. Thus, in prohibiting payment to a witness "contingent upon the content of the witness's testimony," that phrase in RPC 3.4(b) appears to prohibit only making a payment to a witness dependent on the subject matter or substance of the testimony—in other words, contingent on specifically what the witness testifies about.

However, cases from other jurisdictions interpreting similarly worded disciplinary rules uniformly prohibit paying a witness to testify rather than focusing specifically on the content of the testimony. For example, in *Patel v. 7-Eleven, Inc.*, 2015 WL 9701133 (CD Cal 2015), a California federal district court, applying California Rule of Professional Conduct 3.4(d), which, like Oregon's RPC 3.4(b), prohibits a lawyer from acquiescing in the payment to a witness "contingent upon the content of the witness's testimony," explained that that rule is intended to

"'prohibit a lawyer from paying or offering to pay money or other rewards to witnesses in return for their testimony, be it truthful or not, because it violates the integrity of the

> justice system and undermines the proper administration of justice. Quite simply, a witness has the solemn and fundamental duty to tell the truth. He or she should not be paid a fee for doing so.'"

*Id.* at \*5 (quoting *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assn.*, 865 F Supp 1516, 1526 (SD Fla 1994), *rev'd in part on other grounds*, 117 F3d 1328, 1335 n 2 (11th Cir 1997). The court in *Patel* cited *Dyll v. Adams*, 1997 WL 222918 (ND Tex 1997), in which a federal district court applied Texas Rule of Professional Conduct 3.4(b), which also prohibits lawyers from acquiescing in payment to a witness contingent upon the content of the witness's testimony. In *Dyll*, the court stated, "Payment for factual testimony is generally prohibited even if the testimony sought is truthful." *Id.* at \*2. In addition, the *Patel* court cited *Caldwell v. Cablevision Sys. Corp.*, 86 AD3d 46, 925 NYS2d 103 (2011), in which the New York Appellate Division applied New York Rule of Professional Conduct 3.4(b), which also prohibits lawyers from acquiescing in payment to a witness contingent upon the content of the witness's testimony. There, the court stated that, although witnesses are entitled to attendance fees and travel expenses, the "giving of testimony as to facts within one's knowledge is a matter of public duty" and an "inherent burden of citizenship, which requires no compensation." 86 AD3d at 50, 925 NYS2d at 106 (citations and internal quotation marks omitted). The *Patel* court noted that, "to compensate otherwise would be subversive of the orderly and efficient administration of justice, even where a witness is contracted to tell the truth, rather than to testify falsely, and payment creates an incentive, even unconscious, toward biased testimony." 2015 WL 9701133 at \*5 (citations and internal quotation marks omitted). Those cases all support the conclusion that a lawyer acquiesces in the payment to a witness "contingent upon the content" of the witness's testimony if the witness is paid to give testimony, whether truthful or not.

Whether it prohibits paying a witness to testify generally or paying a witness to testify in a specific way, the phrase "contingent upon the content of the witness's testimony" is not easily understood to speak to paying a witness not to testify at all, and neither of the authorities

offered by the Bar hold otherwise. As discussed, the Bar cites *Boothe* and the Washington State case, *Bonet*, in support of its argument that respondent violated RPC 3.4(b). However, neither of those cases involves an allegation that the lawyer paid or acquiesced in the payment to a witness "contingent on the content" of the witness's testimony. In *Boothe*, after a client filed a bar complaint against his lawyer over a fee dispute, the lawyer offered to settle the fee claim if the client agreed not to testify against him in any bar disciplinary proceeding. Based on that conduct, the Bar charged the respondent with engaging in conduct prejudicial to the administration of justice in violation of *former* DR 1-102(A)(5), the predecessor to RPC 8.4(a)(4). The court held that an attempt to induce a potential witness not to testify in an official proceeding, even if unsuccessful, is prejudicial to the administration of justice. 303 Or at 653. *Boothe* did not involve *former* DR 7-109(C), RPC 3.4(b)'s predecessor. In fact, the Bar did not charge the respondent in *Boothe* with paying, offering to pay, or acquiescing in payment of compensation to a witness contingent upon the content of the witness's testimony in violation of *former* DR 7-109(C), and it did not discuss the meaning of the phrase "contingent on the content" of a witness's testimony.

In addition, as noted, in *Bonet*, the Washington Supreme Court held that inducing a witness not to testify violated Washington RPC 3.4(b). However, the Washington version of RPC 3.4(b) does not include a prohibition on a lawyer acquiescing in the payment to a witness contingent upon the content of the witness's testimony. Rather, it provides that a lawyer shall not "falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law." Thus, in finding that the lawyer had violated Washington RPC 3.4(b), the Washington court found that the lawyer had "offer[ed] an inducement to a witness that is prohibited by law." 144 Wash 2d at 514. It did not have occasion to determine whether the lawyer had paid or acquiesced in the payment to a witness "contingent on the content" of the witness's testimony.

Based on our analysis of the wording of RPC 3.4(b), read in context, we conclude that a lawyer acquiesces in a

payment to a witness contingent upon the content of the witness's testimony if the payment to the witness depends on the witness testifying, whether truthful or not. The Bar has not contended that any provision in any of the three settlement agreements conditioned payment to G on his agreement to testify—or to testify in any particular way—in a legal proceeding. We therefore hold that the Bar has failed to establish by clear and convincing evidence that, in drafting the three settlement agreements, respondent violated RPC 3.4(b) by "acquiesce[ing] in payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case."

The fact that we conclude that respondent's conduct did not violate RPC 3.4(b) as alleged in the Bar's complaint does not necessarily mean that that conduct does not violate any other part of RPC 3.4(b) or some other Rule of Professional Conduct. Each of the settlement agreements included provisions that purported to prohibit G from testifying in a future legal proceeding, using wording broad enough to apply even if G were subject to a lawful subpoena or an order of a court or quasi-judicial authority to testify and he lacked a basis for asserting privilege. Offering agreements with those provisions could violate the part of RPC 3.4(b) that prohibits offering an inducement to a witness that is prohibited by law. That is so because an Oregon statute, ORS 162.285(1)(a), provides that a person commits the crime of tampering with a witness if the person "induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to * * * unlawfully withhold any testimony." That conduct also could violate RPC 3.4(f) (prohibiting "advis[ing] or caus[ing] a person to secrete himself or herself or to leave the jurisdiction of a tribunal for purposes of making the person unavailable as a witness therein") because paying a witness not to testify in a legal proceeding could be seen to "cause" the person to avoid service of process that would require the person to testify.

However, the Bar did not charge respondent with violating RPC 3.4(b) by offering an inducement that is prohibited by law and it has not argued that we may find

respondent guilty of violating a part of a disciplinary rule different from what was charged in the complaint or argued to the trial panel. As we stated in *In re Ellis*, 356 Or 691, 738, 344 P3d 425 (2015), a respondent in a disciplinary case must be put on notice of the conduct constituting the violation as well as the rule violation at issue. *See also* BR 4.1(3) (providing that a formal complaint "shall set forth succinctly the acts or omissions of the respondent, *including the specific statutes or rules of professional conduct violated, so as to enable the respondent to know the nature of the charge or charges against the respondent*" (emphasis added)). Here, the Bar notified respondent that the described conduct violated the part of RPC 3.4(b) prohibiting acquiescing in a payment to a witness that was contingent on the content of the witness's testimony. However, the complaint did not put respondent on notice that he could be found guilty of violating a different part of that rule. Importantly, it did not allege that respondent's conduct violated the prohibition against offering an inducement prohibited by law (much less identify which law or laws). For that reason, we conclude that the Bar failed to prove that respondent violated RPC 3.4(b) in this case.

B. *RPC 3.4(c), Prohibiting Knowingly Disobeying an Obligation Under the Rules of a Tribunal*

RPC 3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." The trial panel found that respondent violated RPC 3.4(c) when he drafted and executed the September settlement agreement that purported to civilly compromise Bean's criminal charge and facilitated a $200,000 settlement payment to G based on terms similar to those in the June settlement agreement that the trial court had rejected. The trial panel explained that, in 2021, respondent had pleaded guilty to and found in convicted of contempt of court under ORS 33.015(2) for preparing the September settlement agreement in violation of the trial court's order rejecting the June settlement agreement.

As relevant here, ORS 33.015(2)(b) defines "contempt of court" as certain acts "done willfully", including

"disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments." The trial panel stated that the 2021 contempt judgment established that the state had proved beyond a reasonable doubt all the material elements of a contempt-of-court charge against respondent: that a valid court order existed, that respondent knew of that order, and that respondent willfully failed to comply with that order. Therefore, the trial panel concluded, the contempt judgment conclusively established that respondent had willfully disobeyed a ruling of a tribunal in a proceeding in violation of RPC 3.4(c).

On review, respondent argues that the court is not required to find that he violated RPC 3.4(c) simply because he pleaded guilty to "willfully" committing contempt of court. Respondent asserts that he admitted in his petition that he "willfully resisted the court's authority *** by *negligently* drafting" the September settlement agreement. (Emphasis added.) Thus, he contends, the evidence that he presented to the trial panel demonstrates that his conduct was merely negligent and that this court should not conclude that he *knowingly* disobeyed an obligation under the rules of a tribunal as required to find that he violated RPC 3.4(c).[10]

We reject that argument because a finding of contempt of court has the mental state requirement of willfulness, and, as the trial panel observed, respondent "freely and voluntarily" admitted, in his Petition to Admit Contempt of Court, that he committed contempt of court by "willfully resist[ing] the court's authority." In *State ex rel Mikkelsen v. Hill*, 315 Or 452, 458, 847 P2d 402 (1993), this court held that "willfulness," for purposes of the contempt-of-court statute, ORS 33.015(2), may be established by showing "proof that

---

[10] At oral argument in this case, respondent also argued that his guilty plea is not sufficient to prove that he violated RPC 3.4(c) because that rule requires a finding that he "disobeyed" a court order, and he pleaded guilty only to "resisting" a court order. That is, as noted, a person commits contempt of court in one of three ways: by disobeying or resisting or obstructing the court's authority, process, orders or judgments. ORS 33.015(d). In this case, respondent pleaded guilty to willfully resisting a court order, not disobeying an order, and, therefore, he contends, he did not actually violate RPC 3.4(c). Respondent did not, however, develop the argument that committing contempt of court by willfully resisting—rather than disobeying—a court order does not violate RPC 3.4(c), and the Bar did not have an opportunity to respond. For those reasons, we do not address that argument in this opinion.

a party had knowledge of a valid court order and failed to comply with that order." Thus, in admitting that he acted "willfully" in committing contempt of court, respondent has also admitted that he acted "knowingly." The fact that respondent attempted to limit his admission by stating that he acted willfully by acting negligently does not change our analysis. In pleading guilty to contempt of court, respondent admitted facts that establish that he committed contempt of court, including that he acted willfully, and those facts establish a violation of RPC 3.4(c). We therefore conclude that respondent violated RPC 3.4(c).[11]

## C.  *RPC 8.4(a)(4), Prohibiting Conduct Prejudicial to the Administration of Justice*

As discussed, the trial panel also found that respondent violated RPC 8.4(a)(4). That rule provides that "[i]t is professional misconduct for a lawyer to * * * engage in conduct that is prejudicial to the administration of justice." This court has held that RPC 8.4(a)(4) requires the Bar to prove three elements by clear and convincing evidence: (1) that the respondent's actions were "improper"; (2) that the respondent's conduct occurred during the course of a judicial proceeding; and (3) that the respondent's conduct had, or could have had, a prejudicial effect on the administration of justice. *In re Ard*, 369 Or 180, 193, 501 P3d 1036 (2021). The rule does not contain an express mental state requirement; rather, "it focuses on the effect of the lawyer's conduct, not on the lawyer's intent." *Id.* at 194 (internal quotation marks and citations omitted).

As relevant here, the Bar charged respondent with three counts of violating RPC 8.4(a)(4): (1) for drafting and offering the June, July, and September settlement agreements that included provisions conditioning payment to G on his agreement not to testify about Bean's conduct in the 2013 incident, (2) for drafting the September settlement agreement to include terms similar to the civil compromise agreement that the trial court had rejected in denying Bean's motion for a civil compromise, and (3), similarly, by

---

[11]  We express no opinion about whether the trial court, in denying the defense motion to dismiss the charges against Bean through a civil compromise, imposed an "obligation" on respondent not to file a similar agreement in the future.

pursuing the objective of the civil compromise after the trial court denied the motion. Although the trial panel did not expressly reject the Bar's contention that respondent had committed two separate violations of RPC 8.4(a)(4) by violating RPC 3.4(c), it found that that Bar had proved by clear and convincing evidence that respondent had committed only two violations of RPC 8.4(a)(4) in total. The trial panel found two violations because, as it stated, the same conduct that violated RPC 3.4(b) and RPC 3.4(c) also violated RPC 8.4(a)(4), the conduct occurred during a judicial proceeding, and the conduct caused or could have had a prejudicial effect on the administration of justice.

Respondent's only challenge to the trial panel's findings that he violated RPC 8.4(a)(4) is a reprisal of his arguments that he did not violate either RPC 3.4(b) or RPC 3.4(c). We agree with the trial panel that respondent's violation of RPC 3.4(c) also violates RPC 8.4(a)(4). However, as discussed, we find that the Bar did not prove by clear and convincing evidence that respondent violated RPC 3.4(b) in the manner charged in the complaint when he drafted the three settlement agreements to include provisions prohibiting G from testifying against Bean in a future legal proceeding, even though they contained no exception for testimony pursuant to a lawful subpoena. Nonetheless, as we shall explain, we conclude that that conduct does independently violate RPC 8.4(a)(4).

First, with respect to petitioner's conduct in including provisions in the three settlement agreements purporting to prohibit G from testifying against Bean in a future legal proceeding, our case law suggests that paying a witness not to testify in a future legal proceeding may be "improper." As discussed, in *Boothe*, this court held that a lawyer's attempt to induce a potential witness not to testify in a Bar disciplinary proceeding was prejudicial to the administration of justice in violation of *former* DR 1-102(A)(5), the predecessor rule to RPC 8.4(a)(4). 303 Or at 653. Similarly, in *In re Smith*, 316 Or 55, 60-61, 848 P2d 612 (1993), this court held that a lawyer's attempt to induce an examining doctor not to express a particular medical opinion in his client's worker's compensation proceeding, even if

unsuccessful, was prejudicial to the administration of justice in violation of *former* DR 1-102(A)(5). Those cases seem to suggest that a lawyer engages in conduct prejudicial to the administration of justice any time the lawyer offers an inducement to a potential witness not to testify in a legal proceeding.

However, neither *Boothe* nor *Smith* involved payment to a party in connection with the settlement of all civil claims between the parties to the agreement. We are unaware of any case holding that settlement agreements cannot include provisions precluding one party from testifying against another party concerning matters covered by the agreement, and we are reluctant to so hold. Nonetheless, it is indisputable that any such agreement would be prejudicial to the administration of justice if it purported to compel a party to refuse to comply with a subpoena or other lawful order to testify in a future legal proceeding. In this case, the settlement agreements that respondent drafted and offered to G prohibited G from testifying in a future legal proceeding and did not include an exception for circumstances in which G may be ordered to testify by a court or quasi-judicial authority. Therefore, we conclude that respondent's conduct in facilitating a payment to G in exchange for G's agreement not to testify against Bean in a future legal proceeding was "improper."

We next consider whether respondent's improper conduct occurred during the course of a judicial proceeding.[12] As the trial panel noted, respondent conceded that the June settlement agreement was drafted while the 2015 criminal case against Bean was pending. We therefore find that respondent's improper conduct in drafting that agreement was "during the course of a judicial proceeding." The criminal case also was pending when the July settlement agreement was drafted and executed. The trial panel rejected respondent's argument that his conduct in connection with the July settlement agreement did not occur "during the course of a judicial proceeding," because that agreement related only to unfiled civil claims. The trial panel found that the July settlement agreement prohibited G from

---

[12] By "judicial proceeding," we also mean "proceeding with the trappings of a judicial proceeding." *In re McGraw*, 362 Or 667, 691, 414 P3d 841 (2018).

testifying that Bean had engaged in "tortious wrongdoing" in *any* proceeding, and that could have included the ongoing criminal case. We agree. Respondent's improper conduct in drafting the July settlement agreement occurred "during the course of a judicial proceeding."

Whether respondent's improper conduct in drafting the September settlement agreement also occurred during the course of a judicial proceeding is a closer question, because, by the time the parties had signed that agreement, the trial court judge had orally dismissed the criminal case. The trial panel found that the improper conduct occurred during a judicial proceeding because respondent drafted the September settlement agreement and sent a copy to Deveny before the judge's order was entered and the case was officially closed. We agree with the trial panel's conclusion, but for a different reason.

As is evident from our discussion thus far, we routinely repeat that an element of a violation of RPC 8.4(a)(4) is that the misconduct occurred "in the course of a judicial proceeding." *See, e.g.*, *Ard*, 369 Or at 193; *In re Maurer*, 364 Or 190, 199, 431 P3d 410 (2018); *In re McGraw*, 362 Or 667, 691, 414 P3d 841 (2018). However, as this case highlights, that phrasing unduly narrows the circumstances in which conduct that is actually prejudicial to the administration of justice will violate RPC 8.4(a)(4). That is, in the trial panel's view, applying that criterion, whether a violation occurred here depended on the fortuitous fact that respondent happened to send Deveny a copy of the settlement agreement before the trial court entered the order dismissing the criminal case. But here, and in any case involving paying a witness not to testify in a future legal proceeding, any *harm* to the administration of justice would necessarily occur in a *future case*, if there is one. Thus, it does not make sense always to require that the lawyer's misconduct occur in the course of a *current* judicial proceeding. Rather, in a case like this one, if the harm that will result from a lawyer's misconduct is in connection with a judicial proceeding, including a judicial proceeding that may or may not occur in the future, the lawyer's misconduct relates to the administration of justice as required for a violation of 8.4(a)(4).

Finally, we also find that respondent's improper conduct "had, or could have had, a prejudicial effect upon the administration of justice." As the trial panel noted, that inquiry "focuses upon the potential effect of a lawyer's conduct upon the functioning of a proceeding, as well as upon a party's substantive interest in the proceeding." *In re Gustafson*, 327 Or 636, 643, 968 P2d 367 (1998). Here, improperly inducing G not to testify in a legal proceeding could have harmed the prosecution of the 2015 and 2019 criminal cases against Bean and any other future legal proceedings at which G could have been subpoenaed and ordered by a court or quasi-judicial authority to testify.

Accordingly, we conclude that the Bar has proved by clear and convincing evidence that respondent's drafting and offering the settlement agreements so as to condition payment to G on his agreement not to testify against Bean in a future legal proceeding, without an exception for circumstances in which G may be ordered to testify by a court or quasi-judicial authority, was prejudicial to the administration of justice in violation of RPC 8.4(a)(4). In addition, as discussed, we have found that respondent violated RPC 3.4(c) and we conclude that that violation also constitutes a violation of RPC 8.4(a)(4). Therefore, we conclude that the trial panel did not err in finding that respondent committed two violations of RPC 8.4(a)(4).

## III.   SANCTION

The trial panel suspended respondent from the practice of law for 60 days as a sanction for his misconduct. The Bar urges us to impose a suspension of at least six months. Respondent, for his part, contends that, if this court finds that he committed the charged violations, a sanction ranging from a public reprimand to a suspension of no more than 60 days is appropriate. In determining the appropriate sanction, we apply the framework set out in the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards): We first determine the preliminary sanction by identifying the nature of the ethical duty violated, the respondent's mental state at the time of the violation, and the extent of any actual or potential injury caused by the respondent's misconduct. *In re*

*Abel*, 374 Or 350, 366, 577 P3d 777 (2025). We then consider aggravating and mitigating factors to determine whether the preliminary sanction should be adjusted. *Id.* Finally, we consider this court's case law to decide the appropriate sanction. *Id.* As explained below, we conclude that a suspension of 30 days is an appropriate sanction for respondent's misconduct.

### A.  *Preliminary Determinations*

#### 1.  *Duties violated*

Turning first to the ethical duties violated, we conclude that respondent violated his duties to the legal system by engaging in conduct prejudicial to the administration of justice in including terms in the three settlement agreements that offered an improper inducement to a witness not to testify in a future legal proceeding and in failing to obey a court order. ABA Standard 6.0.

#### 2.  *Mental state*

The ABA Standards recognize that a lawyer may act intentionally, knowingly, or negligently. ABA Standards at 5. The most culpable mental state is acting with intent. "Intent" is defined as "the conscious objective or purpose to accomplish a particular result." *Id.* at 7. The next most culpable mental state is acting with knowledge. "Knowledge" is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* And the least culpable mental state is negligence. "Negligence" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id.*

The trial panel found that respondent acted knowingly in violating RPC 3.4(b) by drafting the three settlement agreements to include provisions conditioning payment to G on his agreement never to testify in a future legal proceeding about Bean's conduct in the 2013 incident. As discussed, we conclude that respondent did not violate RPC 3.4(b) as

alleged in the complaint, but we find that respondent violated RPC 8.4(a)(4) by drafting three settlement agreements that conditioned payment to G on G's agreement not to testify in a future legal proceeding, even in response to an order of a court or quasi-judicial authority. For that reason, the trial panel's discussion of respondent's mental state for the RPC 3.4(b) violations applies to respondent's conduct in violating RPC 8.4(a)(4).

The trial panel found that respondent was consciously aware that those agreements conditioned the payment of funds to G on G's agreement not to testify, but it found that the Bar had failed to prove by clear and convincing evidence that respondent subjectively intended the settlement agreements to prevent G from testifying in a future criminal case. The trial panel found respondent credible when he testified that he subjectively believed that any provision preventing G from testifying would be unenforceable and that, in any case, G would not cooperate with any prosecution of Bean or appear in any criminal trial against him. As for the violation of RPC 3.4(c), the trial panel found, based on the 2021 contempt judgment, that respondent had acted knowingly.

Respondent does not challenge the trial panel's conclusion that he acted knowingly in drafting and presenting the three settlement agreements. The Bar, however, urges us to find that respondent acted intentionally, at least with respect to the September settlement agreement, because, it contends, in drafting that agreement, respondent made "exacting changes" to the June settlement agreement and because he testified before the trial panel that, after talking to G in 2018, his first thought was "You agreed that you weren't going to[,] you know, bring any criminal charges."

After reviewing respondent's testimony and comparing the June and September settlement agreements, we do not think that there is clear and convincing evidence in the record that respondent intended that agreement to prohibit G from testifying pursuant to a lawful subpoena.[13] Nonetheless,

---

[13] The trial panel found that respondent's explanation—that, except with respect to the provisions concerning the timing and amount of the payment to G, he was careless in preparing the September settlement agreement—not to

we agree with the trial panel that respondent acted knowingly in including the word "testify" in the September settlement agreement. It is not exculpatory that respondent believed that provisions in the agreement preventing G from testifying would be unenforceable or that respondent believed that G—independent of the agreement—would not cooperate with any prosecution of Bean or appear in any criminal trial against him. But, as the trial panel found, those facts show that respondent had a "conscious awareness of the nature or attendant circumstances of the conduct," but that he did not have "the conscious objective or purpose" to prohibit G from testifying pursuant to a lawful subpoena.

As previously discussed, we also agree with the trial panel that the contempt judgment conclusively establishes that respondent acted knowingly in drafting the September settlement agreement to include provisions similar to those in the civil compromise agreement that the trial court had rejected. Finally, because the second violation of RPC 8.4(a)(4) is based on the same conduct that underlies the violation of RPC 3.4(c), we also find that that violation was knowing.

### 3. *Injury*

In determining an appropriate sanction, the court considers both actual and potential injury. ABA Standards at 6; *In re Keller*, 369 Or 410, 417, 506 P3d 1101 (2022). The Bar urges us to conclude that respondent's misconduct caused actual injury to the court, the legal system, and to the legal profession because, in including provisions in the

---

be credible, because, in the trial panel's view, in drafting the September settlement agreement, respondent made "meticulous additions and detailed edits" to the June settlement agreement, "including verb changes and other modifications that belie any suggestion that [r]espondent merely 'cut and paste[d]' language from the June agreement without closely reviewing and editing that language." Respondent disputes that credibility determination because the September settlement agreement is identical to the June settlement agreement in almost all material respects, including, importantly, the title, which refers to a civil compromise, even though the criminal case had been dismissed at that point, and all the provisions in which the word "testify" appeared. We conclude that it ultimately is irrelevant whether respondent's edits were meticulous or merely careless, because, as we explain in the text, we agree with the trial panel that respondent knowingly included provisions in each of the three agreements prohibiting G from testifying in future legal proceedings without an exception for a circumstance in which he was required to do so by a lawful subpoena or other court order but that respondent did not draft any of the agreements with the intent to require G to refuse to testify in any matter pursuant to a lawful subpoena.

three settlement agreements conditioning payment to G on G's agreement not to testify about the 2013 incident in any future legal proceeding, respondent actually induced G not to testify in the criminal proceedings against Bean. In support of that argument, the Bar points to G's refusal to cooperate in the criminal trials against Bean, which ultimately led to their dismissal. The Bar also contends that respondent's violation of RPC 3.4(c) caused actual injury because any time a lawyer commits contempt of court, it "seriously undermine[s] the court system and the integrity of the profession."

We disagree that the Bar proved by clear and convincing evidence that respondent's misconduct caused actual injury. Like the trial panel, we find that the Bar has not established by clear and convincing evidence that G based his decision not to testify against Bean in the two criminal cases on the fact that he was prohibited from doing so by provisions in the settlement agreements. For one thing, Deveny made clear to respondent from the outset that G did not wish to participate in any criminal proceeding, even in response to a subpoena, and the Bar has not pointed to any evidence in the record that G was motivated not to participate by the settlement agreements themselves. For similar reasons, and because the parties signed the September settlement agreement after the trial court had orally granted a motion to dismiss the criminal case, respondent's violation of RPC 3.4(c) also did not cause actual injury.

However, respondent's misconduct did cause potential injury to the legal system and the legal profession because the settlement agreements could have persuaded G not to testify against Bean in a subsequent civil or criminal case. In addition, respondent's misconduct caused potential injury because offering money to a witness in exchange for agreeing not to testify without excluding circumstances in which the witness may be ordered to testify by a court or quasi-judicial authority could interfere with the proper functioning of the justice system and, when done by a lawyer, as here, it undermines confidence in the legal profession. Likewise, resisting court orders also has the potential to interfere with the administration of justice and undermines confidence in the legal profession.

####    4.   *Preliminary sanction*

Taking together the duties violated, respondent's mental state, and the actual and potential injury caused by respondent's misconduct, and before considering aggravating and mitigating factors, the following ABA Standard applies. Under ABA Standard 6.22, suspension is generally appropriate when a lawyer knowingly violates a court order and causes actual or potential injury to a client or party or interference or potential interference with a legal proceeding. Neither of the other ABA Standards that apply to knowing violations of duties owed to the legal system—neither ABA Standard 6.12 nor ABA Standard 6.32[14]—directly applies here, but to the extent they have any relevance at all, they also suggest that a suspension is generally appropriate for a knowing violation of the disciplinary rules. Thus, given our conclusion that respondent's violations of RPC 3.4(c) and RPC 8.4(a)(4) were knowing and caused at least potential harm to the legal system and the legal profession, we conclude that the presumptive sanction is a suspension.

### B.   *Aggravating and Mitigating Factors*

####    1.   *Aggravating factors*

The trial panel found that the following aggravating factors are present in this case: Pattern of misconduct, ABA Standard 9.22(c); multiple offenses, ABA Standard 9.22(d); refusal to acknowledge wrongful nature of conduct, ABA Standard 9.22(g); vulnerability of the victim, ABA Standard 9.22(h); and substantial experience in the practice of law, ABA Standard 9.22(i). The Bar urges us to find those

---

[14]  ABA Standard 6.12 provides:

"Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

ABA Standard 6.32 provides:

"Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding."

aggravating factors and additionally to find that respondent had a dishonest or selfish motive, ABA Standard 9.22(b).

Respondent counters that the record does not support findings that all those aggravating factors are present. First, he contends that the trial panel correctly rejected the Bar's argument that he acted with a dishonest or selfish motive. ABA Standard 9.22(b). We agree. The Bar does not offer any evidence to support its argument that respondent acted with a selfish or dishonest motive, and we agree with the trial panel that the evidence showed that respondent zealously advocated for his client and did not stand to gain personally from his drafting of the settlement agreements.

Respondent also contends that there was no "pattern of misconduct." The trial panel found that this aggravating factor was present because respondent drafted and proposed three agreements that each contained similar provisions conditioning payment on G's agreement not to testify against Bean. Respondent argues that that does not show a "pattern" of misconduct as would a case in which a lawyer commits the same violations with multiple clients or in different circumstances. Rather, it merely shows that respondent repeatedly tried to resolve the same issue between the same client and the same adverse party. He argues that that may give rise to multiple disciplinary offenses, but it does not show a "pattern" of misconduct.

In *In re Redden*, 342 Or 393, 397, 153 P3d 113 (2007), this court examined "the elements of a 'pattern of misconduct' that the Bar must prove to establish that aggravating circumstance." The court stated that, "[w]hen considering the sanction issue, this court has found a pattern of misconduct in [neglect] cases when the accused lawyer engaged in similar misconduct in the past, the lawyer's conduct violated multiple disciplinary rules, or the lawyer neglected the legal matters of multiple clients." *Id.*; *In re Walton*, 352 Or 548, 559, 287 P3d 1098 (2012) (court has applied pattern-of-misconduct aggravating factor "only in cases in which the lawyer has violated the disciplinary rules in more than one case or matter"); *see also In re Davenport*, 334 Or 298, 321, 40 P3d 91 (2002) (no pattern of misconduct where all misrepresentations occurred in same proceeding and pertained to

same subject). Here, although we have found that respondent's conduct violated two different disciplinary rules, we have not found that he committed the same violations against multiple clients or that respondent had committed similar violations in the past. We therefore agree that the Bar has not shown that respondent engaged in a pattern of misconduct under RPC 9.22(c).

Respondent also argues that the trial panel erred in finding that his refusal to acknowledge the wrongful nature of his conduct was an aggravating factor. RPC 9.22(g). He observes that this court has held that accused lawyers have the right to "vigorously defend themselves against all charges and [they] may refuse to concede the Bar's factual allegations without reprisal for doing so." *Maurer*, 364 Or at 204. The Bar responds that that statement from this court's opinion in *Maurer* was cabined by the court's further statement that, "when a lawyer admits the Bar's factual allegations in nearly all material respects but continues to claim his conduct was not blameworthy or detrimental, the lawyer has failed to acknowledge the wrongful nature of his conduct." *Id.* The Bar argues that that aggravating factor applies because respondent has admitted all the predicate facts that demonstrate that he committed the alleged violations, and, therefore, his refusal to concede the wrongfulness of his conduct is unreasonable.

Notably, in *Maurer*, this court went on to say that "[a] lawyer does not refuse to acknowledge the wrongfulness of his or her conduct when he or she makes a plausible legal argument that the admitted conduct does not violate the disciplinary rules." *Id.* In this case, respondent made a plausible legal argument that his admitted conduct did not violate RPC 3.4(b) as charged by the Bar, and, as discussed, we agree and find that the Bar has not shown by clear and convincing evidence that respondent committed those alleged violations. And, although we have concluded that respondent's conduct resulting in the contempt judgment violated RPC 3.4(c), we do not think that respondent's argument that it did not violate that rule was implausible. We therefore conclude that the aggravating factor set out in RPC 9.22(g)—refusal to acknowledge the wrongfulness of one's conduct—does not apply.

Finally, respondent argues that the trial panel erred in concluding that the vulnerability of the victim, ABA Standard 9.22(h), was an aggravating factor in this case. Respondent contends that the allegations in the complaint do not relate to the mistreatment of a vulnerable victim; rather, they all relate to the integrity of the judicial system. Moreover, respondent continues, all of his interactions with G were through G's lawyer, Deveny, and respondent asserts that he had no reason to doubt that Deveny was advocating for and protecting her client.

The trial panel found that that aggravating factor applied because G was a vulnerable minor and alleged sexual abuse victim whom respondent knew to be experiencing financial and severe emotional distress. However, the trial panel stated that it was assigning "less weight" to that factor given that respondent had no direct contact with G and that G was represented by counsel.

We are not aware of any case in which we have held that a person represented by opposing counsel in a matter in which the respondent was charged with disciplinary violations was deemed a "vulnerable victim" of the respondent. Respondent was entitled to expect that Deveny was fully representing G's interests in any negotiation or proposed settlement of any civil and criminal proceedings. G was not respondent's client, and he was not respondent's "victim." The "vulnerable victim" aggravating factor does not apply.

We are then left with two aggravating factors: multiple offenses, ABA Standard 9.22(d); and substantial experience in the practice of law, ABA Standard 9.22(i). The trial panel also found several mitigating factors: absence of a prior disciplinary record, ABA Standard 9.32(a); absence of a dishonest or selfish motive, ABA Standard 9.32(b); character or reputation, ABA Standard 9.32(g); and delay in the disciplinary proceedings; ABA Standard 9.32(j). The trial panel explained as to that last factor that all of respondent's misconduct took place in 2015, ten years before the disciplinary proceedings. And, although the Bar made the point that it had not discovered respondent's misconduct until he was indicted in 2019 and that it had stayed its investigation until those charges were resolved, respondent's criminal

case ended in May 2021, and the Bar did not file its complaint until July 2023. The trial panel observed that respondent was responsible for some of the delay, but it found that his actions did not unreasonably delay the Bar's investigation or the proceedings. Accordingly, it afforded some, but not much, mitigating weight to the delay in the proceedings since the misconduct occurred. The Bar does not challenge the trial panel's findings of mitigating factors.

We agree with the trial panel's findings as to mitigation, and we conclude that the mitigating factors outweigh the aggravating factors. We turn to consider this court's case law.

C.   *This Court's Case Law; Sanction Determination*

We have found that respondent committed one violation of RPC 3.4(c) and two violations of RPC 8.4(a)(4) and that those violations were knowing. In addition, we have found that the mitigating factors outweigh the aggravating factors. We are aware of no case that closely matches those circumstances.

In considering the appropriate sanction for respondent's conduct in offering an inducement to G not to testify, the trial panel pointed to *In re Moore*, 29 DB Rptr 73 (2015), in which the respondent stipulated to a public reprimand for knowingly offering an improper inducement in violation of RPC 3.4(b) and RPC 8.4(a)(4). In that case, the stipulation noted that the respondent had prior disciplinary offenses and substantial experience in the practice of law, but that he did not have a dishonest or selfish motive, he cooperated with the disciplinary proceedings, he had expressed remorse, and the prior offenses had taken place years earlier. Thus, the stipulation noted that, although a suspension is generally appropriate when a lawyer offers an improper inducement to a witness and causes injury or potential injury to a party or interference with the outcome of legal proceedings, in light of the applicable aggravating and mitigating factors, a reprimand was the correct sanction.

The trial panel in this case also cited two other cases in which a public reprimand was found to be the appropriate sanction for a lawyer who committed a single violation of

RPC 3.4(b) by offering an improper inducement. *In re Wolf*, 27 DB Rptr 208 (2013) (stipulated public reprimand for lawyer who violated RPC 3.4(b) by drafting a settlement agreement for a defendant that conditioned payment of money in part on the plaintiff signing and affidavit that negated part of her complaint); *In re Lafky*, 11 DB Rptr 9 (1997) (public reprimand for lawyer who violated *former* DR 7-109(C), the predecessor to RPC 3.4(b), by offering to pay a witness a fee in exchange for providing supportive testimony).

In addition, the trial panel cited several cases from other states in which the courts imposed suspensions of 30 to 90 days for conduct that the trial panel considered to be more like respondent's conduct here, because they involved lawyers who had offered to settle claims in exchange for a witness's agreement not to testify: *In re Kennedy*, 864 NW2d 342, 347 (Minn 2015) (imposing 30-day suspension where lawyer engaged in conduct prejudicial to administration of justice by offering in a letter to settle a crime victim's civil claims for a cash payment and agreement not to testify in the defendant's criminal case); *The Florida Bar v. Machin*, 635 So 2d 938 (Fla 1994) (imposing 90-day suspension where lawyer engaged in conduct prejudicial to the administration of justice by offering to set up a trust fund for a minor victim of lawyer's client if the victim's family agreed not to testify against his client during a sentencing hearing); and *Matter of Lutz*, 101 Idaho 24, 27, 607 P2d 1078, 1081 (1980) (imposing one-month suspension where lawyer, "[Bean]y drafting the 'covenant not to testify' and by tenaciously clinging to its terms, *** attempted to short-circuit the judicial process, and in so doing was guilty of conduct prejudicial to the administration of justice").

The Bar urges the court to impose a suspension of at least six months for respondent's violations of RPC 3.4(b). Again, we have found that the Bar has not proved those violations by clear and convincing evidence, but we have found that respondent's conduct in drafting and proposing the settlement agreements did violate RPC 8.4(a)(4). We therefore consider the Bar's argument as to the appropriate sanction in that light. Nonetheless, we reject the Bar's argument as to the appropriate sanction for a violation of RPC 8.4(a)(4)

because it presumes that this court would find that the presumptive sanction is disbarment, that respondent intentionally committed three separate violations of RPC 3.4(b), and that the aggravating factors significantly outweigh the mitigating factors, which we have not done here. The Bar points to this court's decision in *Boothe*, in which the court suspended the respondent for six months for five violations of the disciplinary rules, but *Boothe* is inapposite. The respondent's violations in *Boothe* included engaging in conduct prejudicial to the administration of justice by offering an improper inducement, but they also included other serious violations, including failing to account to his client for $9,000 paid to him and his subsequent withdrawal of $6,000 from his client trust account even though he knew that there was a dispute over his attorney fee. 303 Or at 655. The Bar also points to multiple other cases in which the court imposed lengthier terms of suspension, but those cases also involved more serious offenses than were committed here.[15] We therefore reject the Bar's suggested case matching as inapposite.

Apart from disputing the Bar's case-matching, respondent provides little argument concerning the appropriate sanction, but he argues that a public reprimand is an appropriate sanction for his attempt to improperly induce a witness not to testify.

We conclude that the Oregon cases that the trial panel cited, in which the lawyer had offered an inducement prohibited by law, are the most apt, and they support a public reprimand for respondent's violation of RPC 8.4(a)(4) in drafting the three settlement agreements.

---

[15] Those cases include the following: *Gustafson*, 327 Or 636 (six-month suspension imposed for a deputy district attorney's unjustified threatening of a criminal defense attorney with criminal or ethical charges in order to secure the defense attorney's favorable testimony); *In re Jeffery*, 321 Or 360, 898 P2d 752 (1995) (nine-month suspension for a criminal defense attorney (whom the court also found to have conflicts of interest) who threatened to refuse to put on defense for client in criminal case for purposes of creating reversible error unless the court granted his motion to continue); *In re Allen*, 31 DB Rptr 2 (2017) (lawyer suspended for one year for engaging in the unlawful practice of law and then intentionally offering to pay individual who made Bar complaint to dismiss the complaint); *In re Chancellor*, 22 DB Rptr 27 (2008) (stipulated 12-month suspension for prosecutor who met socially with a rape victim in a case he was prosecuting and engaged in sexual contact with her, and also committed other crimes).

As for respondent's violation of RPC 3.4(c), the trial panel noted that, in prior disciplinary cases, lawyers have generally received public reprimands for violations of court orders. In *In re McDonald*, 28 DB Rptr 30 (2014), for example, the lawyer received a public reprimand after he pleaded guilty to contempt of court for knowingly disobeying a restraining order. In *In re Rubin*, 25 DB Rptr 13 (2011), the lawyer received a public reprimand for violating a protective order. In *In re Karlin*, 22 DB Rptr 346 (2008), the lawyer received a public reprimand after being found guilty of contempt of court for violating a marriage dissolution judgment. And in *In re Jones*, 13 DB Rptr 133 (1999), the lawyer received a public reprimand for a single violation of his DUII probation.

The trial panel cited several cases in which the lawyers received suspensions rather than public reprimands for disobeying an obligation under the rules of a tribunal, but those cases generally involved more serious misconduct than that present here. For instance, in *In re Carini*, 354 Or 47, 59-60, 308 P3d 197 (2013), the court imposed a 30-day suspension for the lawyer's violation of a court order by repeatedly failing to appear at scheduled court hearings in his client's criminal case. In *In re Chase*, 339 Or 452, 121 P3d 1160 (2005), the court imposed a 30-day suspension because the lawyer repeatedly failed to pay child support and knowingly violated the court's order requiring him to pay child support. In *In re O'Neil*, 34 DB Rptr 132 (2020), the lawyer received a 60-day suspension for knowingly failing to obey a subpoena to appear as a witness in a post-conviction case and then failed to cooperate with disciplinary authorities. And, in *In re Coyner*, 342 Or 104, 149 P3d 1118 (2006), the lawyer was suspended for 90 days for neglecting two legal matters, failing to deposit client funds in his lawyer trust account, failing to render an appropriate accounting to a client, and knowingly violating a court order prohibiting him from drinking alcohol or visiting a bar.

The Bar also points us to *In re Arsanjani*, 20 DB Rptr 23 (2006), where the lawyer was suspended for 30 days after being held in contempt for violating the terms of a restraining order, and *In re Gonzalez*, 25 DB Rptr 1 (2011),

where the lawyer was suspended for 60 days after being found in contempt for failing to comply with multiple court orders.

The Bar's disciplinary cases suggest that a sanction ranging from a public reprimand to a 30-day suspension would be an appropriate sanction for respondent's violation of RPC 3.4(c). Therefore, considering that respondent committed one violation of RPC 3.4(c) and two violations of RPC 8.4(a)(4), and after considering respondent's mental state, the duties violated, the potential for injury, the aggravating and mitigating factors, and our case law, we conclude that a 30-day suspension is the appropriate sanction for respondent's misconduct.

## IV.   CONCLUSION

We conclude that the Bar proved by clear and convincing evidence that respondent violated RPC 8.4(a)(4) when he included provisions in the three settlement provisions improperly inducing G not to testify in a future legal proceeding without excluding circumstances in which G may be ordered to testify by a court or quasi-judicial authority and that he violated RPC 3.4(c) and RPC 8.4(a)(4) when he committed contempt of court. We suspend respondent for 30 days.

Respondent is suspended from the practice of law for 30 days, commencing 60 days from the date of this decision.